[No. 21161.    In Bank.—September 2, 1895.]

# THE PEOPLE, RESPONDENT, v. CHIN HANE ET AL., APPELLANTS.

108  597
a116 250

108  597
126  382

108  597
f129 262

108  597
130  474
130  646

108  597
132  264

108  597
e147 786

CRIMINAL LAW—HOMICIDE—EVIDENCE—HARMLESS RULING.—Upon the trial of defendants accused of murder, where the prosecution, for the purpose of showing motive on the part of one of the defendants, offered evidence to the effect that the deceased was upon the bond of one who had been charged with an assault to murder that defendant, which was objected to upon the ground that there was no evidence that the defendant knew that the deceased had gone upon the bond, such objection goes to the weight of the evidence, rather than to its competency; and, if he had no knowledge of that fact, the evidence was harmless, and no injury could result from its admission.

ID.—TESTIMONY BY COMMITTING MAGISTRATE—ACQUITTAL OF CHARGE OF ASSAULT.—Testimony by a committing magistrate that a person who had been charged with an assault to murder one of the defendants was found not guilty of the charge upon the same day that the deceased, who was surety on his bond, was killed, does not necessarily tend to show the commission of another crime by such defendant.

ID.—TESTIMONY AS TO SOUND OF SHOTS.—Where the prosecution claimed that the shots which killed the deceased were fired from inside a house, and the defendants insisted that they were fired in the open air, the testimony of a witness that the shots sounded as though fired inside the building, that they sounded like a drum or something deep, and did not sound as if they were in the air, is not objectionable as giving the opinion of the witness; but the evidence is simply a statement as to the nature of the impressions of sound left upon the ear, and is admissible.

ID.—REPETITION OF EVIDENCE RECEIVED WITHOUT OBJECTION—HARMLESS RULING.—Where evidence has been already received without objection a repetition of it against objection is harmless.

ID.—PHOTOGRAPH OF ABSENT WITNESS.—Where the prosecution desired to introduce the deposition of an absent witness taken at the preliminary examination, and placed a witness upon the stand, who testified to his efforts in trying to find the absent witness, it is not admissible upon cross-examination for the defense to offer a photograph of the absent witness to the jury for inspection.

ID.—THREATS AGAINST IDENTIFYING WITNESS BY DEFENDANTS IN CUSTODY. Threats made by the defendants, when under arrest and in jail, charged with the killing of the deceased, against one who came to the jail and identified them, that they would kill him, with the evident purpose of intimidating the identifying witness, is proper evidence upon the trial of the defendants, and the fact that they were in custody at the time of the threats is wholly immaterial.

ID.—IDENTIFICATION BEFORE CORONER'S JURY—INSUFFICIENT PROOF—MOTION TO STRIKE OUT.—Where a witness testified, under objection, that he identified the defendants at the coroner's jury, and nothing was

shown as to the conduct of the witness when so identified, the answer of the witness should be stricken out on motion.

ID.—TESTIMONY AS TO CONVERSATION WITH CHINESE—ACQUAINTANCE WITH THE ENGLISH LANGUAGE.—Testimony by a policeman as to a conversation occurring between a Chinese witness and one of the Chinese defendants and himself is admissible, where it appears that the defendant was sufficiently acquainted with the English language to understand all that was said, and did understand it.

ID.—IMPEACHMENT OF IDENTIFYING WITNESS—LAYING FOUNDATION.—A witness who identified the defendants cannot be impeached by independent proof that at the time of the identification the witness pointed out another Chinaman as the guilty party, where no foundation was laid for such impeachment by asking the identifying witness with reference to the matter.

ID.—ARREST OF WITNESS FOR PROSECUTION—CARRYING CONCEALED WEAPONS—EXPLANATION BY OFFICER.—Where a police officer testified that, subsequent to the killing of the deceased, he arrested one of the defendants, who was a witness for the prosecution, for carrying concealed weapons, and found upon him two large pistols, the prosecution may explain the circumstances by proving that the charge was subsequently dismissed.

ID.—DECLARATIONS OF DEFENDANT.—Declarations of a defendant in his own favor are not admissible on his behalf.

ID.—ILLUSTRATION OF LOCATION OF BULLET MARK—DISCRETION.—It is common practice to illustrate upon the wall or upon a door in a courtroom, before the eyes of the jury, the location of a bullet mark; but such matters are largely within the discretion of the trial court, and, in the absence of an abuse of discretion, the appellate court will not interfere.

ID.—INSPECTION OF PREMISES BY JURY—HARMLESS RULING.—Where the jury viewed the premises, and were particularly instructed to view the various bullet marks, error in refusing to allow a witness to testify as to what he saw concerning the course of a bullet or bullet mark in the wall is not ground for a new trial.

ID.—IMPEACHMENT OF WITNESS—COLLATERAL MATTER.—A witness who testified that she was the wife of the deceased, and testified generally as to her manner of life and habits, cannot be collaterally impeached by the defense by testimony that she had been an inmate of a house of prostitution.

ID.—EXAMINATION OF DEFENDANT—IMPEACHMENT OF CREDIBILITY—CONVICTION OF FELONY.—In order to impeach the credibility of a witness, including a defendant when he testifies, he may be asked if he was ever convicted of a felony, and the particular felony of which the defendant has been convicted may be named; but beyond this the examination should not go.

ID.—TESTIMONY FAVORABLE TO DEFENDANT—HARMLESS ERROR.—Where testimony favorable to the defendant is received against his objection, no prejudicial error is committed.

ID.—DEPOSITION OF ABSENT WITNESS—CONSTITUTIONAL LAW.—The deposition of an absent witness, taken at the preliminary examination, may be used at the trial in a case of homicide, and its admission is not in violation of section 13 of article I of the constitution of the state.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial.    A. P. CATLIN, Judge.

The facts are stated in the opinion of the court.

*A. L. Hart,* and *Johnson & Johnson,* for Appellants.

The court erred in admitting the testimony of witness Clark as to what took place on the day of the inquest at the city jail, and in allowing him to detail the conversation with one Lee Sam, a witness in the case, and tell what Lee Sam said.    (*People* v. *Powell,* 87 Cal. 348.)    The court erred in admitting the testimony of witness Rogers as to what Lee Sam told him of the conversation he had had with the defendant Chin Hane.    (*People* v. *Lee Fat,* 54 Cal. 527; *People* v. *Ah Yute,* 56 Cal. 119; *People* v. *Lee Ah Yute,* 60 Cal. 96; *Reid* v. *Reid,* 73 Cal. 206.)    It is error to allow a witness to be asked, "You have never been arrested for a felony?"    (*People* v. *Wells,* 100 Cal. 459.)    A witness cannot be impeached by questioning him about the details and circumstances of a felony of which he has been convicted.    (Code Civ. Proc., sec. 2051; Pen. Code, sec. 1323; *People* v. *O'Brien,* 66 Cal. 602; *People* v. *Bishop,* 81 Cal. 116; *People* v. *Wong Ah Leong,* 99 Cal. 440; *People* v. *Meyer,* 75 Cal. 383.)    It is not competent in a case of homicide to introduce the deposition of any witness, or to prove any fact by any person who is not produced in open court.    (Const., art. I, sec. 13.)

*Attorney General W. H. H. Hart,* and *Deputy Attorney-General Charles H. Jackson,* for Respondent.

Evidence of previous difficulty between prisoner and others connected with deceased is admissible for the prosecution to show a grudge and motive for killing, if connected with the homicide.    (*People* v. *Stonecifer,* 6 Cal. 405; *People* v. *Smith,* 26 Cal. 666; *People* v. *Kern,* 61 Cal. 244; *People* v. *Taylor,* 36 Cal. 263; 15 Am. & Eng. Ency. of Law, 936; *People* v. *Wood,* 3 Park C. C. 681.)

The proper way to bring the testimony of a witness at the coroner's inquest before the jury is to read him his testimony first, and then ask him if he did not so testify. (Code Civ. Proc., sec. 2052; *People* v. *Ching Hing Chang*, 74 Cal. 390; *People* v. *Lee Chuck*, 78 Cal. 322; *People* v. *Bushton*, 80 Cal. 160; *People* v. *Devine*, 44 Cal. 452.) A statement made in the presence of the accused is admissible for the purpose of showing that the accused acquiesced in the statement either by express assent or by silence, or by such conduct as fairly implied assent. (*People* v. *McCrea*, 32 Cal. 98; *People* v. *Estrado*, 49 Cal. 171; *People* v. *Mallon*, 103 Cal. 513.) A witness can sometimes be asked: "You have never been arrested for a felony?" (*People* v. *Fong Ching*, 78 Cal. 175; Roscoe's Evidence, 133; 1 Greenleaf's Evidence, sec. 449; *People* v. *Ah Who*, 49 Cal. 33; *People* v. *Chin Mook Sow*, 51 Cal. 600; *People* v. *Johnson*, 57 Cal. 571; *People* v. *Meyer*, 75 Cal. 383.) Lee Sam was shown to be beyond the jurisdiction of the court, and consequently his testimony taken at the preliminary examination was admissible. (*People* v. *Nelson*, 85 Cal. 422; Code Civ. Proc., sec. 1870, subd. 8; Pen. Code, sec. 686, subd. 3, sec. 1102; *People* v. *Oiler*, 66 Cal. 101; *Territory* v. *Evans*, 2 Idaho, 627; *State* v. *McO'Blenis*, 24 Mo. 412; 69 Am. Dec. 435; *Summons* v. *State*, 5 Ohio St. 340; *Sneed* v. *State*, 47 Ark. 180; *People* v. *Fish*, 125 N. Y. 148, 149.) A witness cannot be impeached by evidence of particular wrongful acts, nor can he be cross-examined as to such acts. (*Sharon* v. *Sharon*, 79 Cal. 633; *Evans* v. *De Lay*, 81 Cal. 103; *Jones* v. *Duchow*, 87 Cal. 109; *People* v. *Webb*, 70 Cal. 120.)

GAROUTTE, J.—The defendants were charged by the district attorney of Sacramento county, upon information, with the crime of murder. They were tried jointly and convicted, and, under the verdict of the jury, the court sentenced Chin Hane to be hanged, and Hoey Yen Sing to be imprisoned for life. This is an appeal from such judgment, and from the order denying a motion for a new trial. The killing occurred at about the

hour of 10 P. M., in a building upon I street, in the city of Sacramento, at the inception or during the progress of an affray, carried on, very probably, by two rival Chinese societies, several Chinamen being killed at the time and others wounded as the result of the discharge of many firearms.    The principal witnesses upon both sides of the case were Chinese, and, as is the universal rule in this class of cases, the evidence on the main questions involved was directly conflicting.    There is no complaint made upon the law given to the jury by the trial court, and the grounds for appeal consist of twenty-three specific, numbered specifications of errors of law committed by the trial court, largely in the admission and rejection of evidence.    Many of these specifications are exceedingly technical, and demand no extended consideration; others of more importance we will proceed to notice.

1. The party killed in the present case was one Lee Gong, and the prosecution, for the purpose of showing motive upon the part of the defendant Hoey Yen Sing, offered evidence, under objection, to the effect that the deceased was upon the bond of one Fong Ah Sheung, who had been charged with an assault to murder the said defendant Sing.    The objection is based upon the ground that there was no evidence that the defendant Sing knew that the deceased had gone upon the bond. The objection, we think, goes to the weight of the evidence, rather than to its competency.    We think it fairly inferable from all the facts and circumstances that he was possessed of such information, but, if he had no knowledge of the fact, then the evidence was entirely harmless, and no injury to him could have possibly resulted from its admission.    The committing magistrate testified that Sheung was found not guilty of the charge of assault with a deadly weapon upon the day that Lee Gong was killed.    It is now argued that this evidence tended to show the commission of another crime by the defendant Sing.    We think no such inference logically follows from the evidence.    From all that

appears by the record, Sheung, the defendant in that case, may have established an alibi, or some other defense equally inconsistent with guilt upon the part of this defendant Sing.

2. The prosecution claimed that the shots which killed the deceased were fired from inside the house. The defense insisted that they were fired in the open air. One Hill was near the scene of the affray at the time, and heard the shots. He was allowed to testify, under objection, that the shots sounded as though fired inside the building. He further testified that it sounded like it was a drum, or something deep. It did not sound like it was in the air. It is claimed that this evidence called for the opinion of the witness, and for that reason was not admissible. In the strict sense the evidence given was not the opinion of the witness any more than it was his opinion that the sounds were made by a drum. The evidence was simply a statement as to the nature of the impressions of sound left upon the ear, and, we think, clearly admissible. (See *Robinson* v. *Exempt Fire Co.*, 103 Cal. 1; 42 Am. St. Rep. 93.) As an additional reason for holding this assignment of error unsound, it may be suggested that the witness, without objection, had previously testified to the same effect. This fact would make the error harmless, if error had been committed.

3. The prosecution desired to introduce the deposition of one Lee Sam, taken at the preliminary examination, and placed a witness upon the stand, who testified to his efforts in trying to find the witness. Upon cross-examination the defense produced a photograph of the absent witness, and offered it to the jury for inspection. An objection was sustained to the course of counsel, and, we think, properly so. We know of no authority for such a practice. The evidence of the witness Lee Lick, and also that of Fay, bearing upon this question, in no way was prejudicial to the defendant's rights, even conceding it to have been erroneously admitted.

4. It appears that, while the defendants were under

arrest and in jail for the killing, one Lee Sam came to the jail and identified them. When identified they each told Lee Sam, in the presence of the other, that they would kill him. This evidence was offered under objection. We deem it admissible. Threats made by a defendant against a witness whom he expects to testify against him, with the evident purpose of intimidating the witness, are proper evidence. The fact that the defendants were in custody at this time is wholly immaterial. The question was further asked the witness: "Did you identify the defendants before the coroner's jury?" He answered, under objection, that he did. Nothing was shown as to the conduct of the defendants when so identified, and it would seem that the answer of the witness should have been stricken out, upon motion, for this reason, but no motion to that effect was made. (See *People* v. *Mallon*, 103 Cal. 513.)

5. Chief of Police Rogers testified, under objection, to a conversation occurring between Lee Sam, himself, and the defendant Chin Hane. The court admitted the evidence upon the ground that the defendant Chin Hane was sufficiently acquainted with the English language to understand all that was said, and did understand it. We see no error in this ruling.

6. Ah Wah testified, when upon the witness-stand, that she identified the defendants at the coroner's office as the men who killed the deceased. The defense proposed to show by another witness who was present at the time of the identification that Ah Wah first pointed out another Chinaman as the guilty party, but upon objection the evidence was rejected. We do not think the witness could be impeached in this manner. Ah Wah should have been recalled, and asked with reference to the matter, and upon her denial of it the foundation would then have been laid for her impeachment by this witness' testimony.

7. Lee Sam was an active friend of the deceased upon the night of the killing. A police officer testified that, subsequent to the killing, he arrested Lee Sam for car-

rying concealed weapons, and found upon him two large pistols. The prosecution then asked the officer if he swore to a complaint, or prosecuted Lee Sam for carrying the weapons. An objection to the question was overruled, and the officer said he did not know whether or not he swore to a complaint, but that the charge was subsequently dismissed. It is not at all clear that the evidence of the police officer, in the first instance, was material to the case at bar, but, if material, we think clearly the opposing side had the right to explain it. It may further be suggested that the defendants were not prejudiced by the action of the court in admitting the evidence.

8. It was not error for the court to exclude evidence of self-serving declarations made by defendant Chin Hane in San Francisco, immediately prior to his departure for Sacramento. We see nothing in the conduct of the district attorney, in his examination of the witness as to his past criminal record, demanding a reversal of the judgment. The witness Cheong, in reply to a question by the people, under objection, testified that he did not know of the police officer finding a trunk in his room with armor in it. The answer of the witness thus renders the question harmless, and defendants were not prejudiced.

9. The witness Lowell, after testifying that he made an examination of the deceased's building after the killing, stated that he found several bullet marks upon the outside of the building. He then continued: "There was a bullet-hole in the door-jamb of Lee Gong's, also. That was six or seven feet high. Some, also, on the brick wall, on the outside, on the edge of the brick wall. It seems to me as if that on the south side of the door there was a big chunk taken out of a brick. I am not positive. There is quite a large corner knocked off of a brick there." The record further discloses as follows:

"*Mr. Hart.*—Q. Which way did it go, diagonally south or straight in?

"Mr. Jones objected. That calls for the opinion of the witness; and the objection was sustained.

"*Mr. Hart.*—Q. Which way did the mark go, directly south or straight in?

"Mr. Jones objected that the question is improper. The mark is still there. At this point there was an argument among counsel, and at the conclusion Mr. Hart said: 'The court stated that I didn't know half the time what I was doing. I want that remark taken down, and take an exception.'

"*The Judge.*—You contradicted the court. I said that you asked the question, and that it was indefinite. . . . .

"*The Judge.*—Q. Did you state that you could describe the piece which you said was knocked off the brick? You say there was a piece of brick chipped off?

"A. It is quite a large piece, two or three inches long. I did not see it knocked off. I know, though, that it was knocked off. It was a three-cornered piece. It had been struck by some missile and knocked off the corner. It was about seven feet from the sidewalk, I should judge. There were several bullet marks on the walls of Lee Gong's, and on the side of the store there is a bullet hole in the edge of the door.

"*Mr. Hart.*—Q. Now, take this door here, and tell where the bullet struck, and in which direction.

"Mr. Jones objected, as irrelevant, incompetent, and immaterial. They have no right to put a witness on the stand to show where a bullet struck. He can describe the marks. Objection sustained. Defendants duly excepted."

This excerpt from the record contains three questions by defendants' counsel to which the court sustained objections. There appears to have been some little friction between counsel and the court at this particular time, an event not without precedent in the past; and we may be allowed to suggest that we think that counsel for defense could well have been more explicit in framing the questions asked, and that the court could

well have been more liberal in its treatment of these questions as asked. It is a very common practice to illustrate upon the wall or upon a door in a courtroom, before the eyes of the jury, the location of a bullet mark, and we think it may well have been done here. But such matters are largely in the discretion of the trial court, and, in the absence of an abuse of such discretion, we cannot interfere. The prosecution offered to allow the witness to describe the bullet marks, and we think the defendants must be satisfied with such offer. If the question addressed to the witness, "Which way did it go, diagonally south or straight in?" referred to the course of the bullet or bullet mark in the wood or brick wall (which is far from plain when we consider the context), then the objection that the question called for the opinion of the witness is not at all tenable, for he was simply asked to state something that he saw. It would be a statement based upon actual inspection, and, as far as we can see, entirely unobjectionable. But, beyond all this, the jury viewed these premises, and were particularly instructed to view these various bullet marks; and, taking all these matters into consideration, no grounds for a new trial of the case are shown.

10. The witness Ah Wah testified that she was the wife of the deceased. She further testified as to her manner of life, habits, etc. The defense attempted to prove that she had been an inmate of a house of prostitution. The evidence was inadmissible. Such matters were entirely collateral, and her veracity could not be impeached in that way. The defendant Chin Hane, upon his direct examination, claimed to be a doctor. On cross-examination he was asked if he was not known in San Francisco as king of the highbinders. Under objection the question was not answered. Even conceding the question improper, the investigation in this direction here stopped, and nothing occurred of sufficient importance to reverse the judgment. In order to impeach the credibility of a witness, including a defendant when he testifies, the witness may be asked if he

has ever been convicted of a felony. The details and circumstances comprising the offense should not be gone into. But, in view of the statute, section 2051 of the Code of Civil Procedure, which allows the proof of the fact to be made either by the evidence of the witness himself or by the record of conviction, it would appear that not only the fact of the conviction could be shown, but the name of the particular felony of which the witness had been convicted. Beyond this the examination should not go.

11. Under objection of the defense, the defendant Chin Hane, upon cross-examination, in answer to interrogatories, testified that he had never had any trouble with Jesse Jim (the party who discovered him to the officers after the killing), nor Ah Wah (deceased's wife), nor the Lee family (to which the deceased belonged), nor the Chee Kong Tong. Under the facts forming the history of this case, we are inclined to think that this character of evidence would have been admissible, coming from the defense, as tending to show an absence of motive to do the killing. Objection was made to its introduction by the defense, upon the ground that it was not cross-examination; and, especially in view of the fact that the witness testifying was the defendant, we think it should have been excluded if the court's attention had been called to that fact. But, as we view this whole line of evidence, it was rather favorable to the defendant than otherwise, and no prejudicial error was committed.

12. In rebuttal the witness Cox, having known the defendant Chin Hane for many years in San Francisco, testified that he had never heard of him as a doctor. The motion to strike out this evidence was properly denied. While in its nature light, its weight was a question for the jury. The evidence of Clark in rebuttal, as to the identification by Ah Wah, was properly admitted. It is contended that the deposition of an absent witness, taken at the preliminary examination in a case of homicide, cannot be used at the trial, for the reason that such a proceeding is violative of section 13,

article I, of the constitution of the state. That provision of the constitution has been construed contrary to the appellants' contention in the case of *People* v. *Oiler*, 66 Cal. 101.

For the foregoing reasons the judgments and orders appealed from are affirmed.

McFARLAND, J., HARRISON, J., HENSHAW, J., and BEATTY, C. J., concurred.

Rehearing denied.