[Crim. No. 1292.   In Bank.—May 13, 1907.]

## THE PEOPLE, Respondent, v. JOSEPH CLARK, Appellant.

CRIMINAL LAW—MURDER—INSANITY—EVIDENCE.—In a prosecution for murder, where the evidence as to the insanity of the defendant is substantially conflicting, the finding of the jury on that defense is conclusive on appeal.

ID.—DEPOSITION TAKEN ON PRELIMINARY EXAMINATION — CONSTITU-
TIONAL LAW.—Subdivision 3 of section 686 of the Penal Code, in so
far as it permits testimony received on the preliminary examination
of the defendant before a committing magistrate, and taken down
by question and answer in the presence of the defendant, who has,
either in person or by counsel, cross-examined or had an oppor-
tunity to cross-examine the witness, when authenticated and filed
in the manner prescribed by section 869 of that code, to be read
in evidence upon its being satisfactorily shown that the witness is
dead or insane or cannot with due diligence be found within the
state, is not in violation of section 13 of article I of the state
constitution. That provision of the constitution does not apply
to testimony given at the judicial proceeding known as a pre-
liminary examination, but refers only to an ordinary extra-judicial
deposition taken, as it is called, *de bene esse.*

ID.—PRESUMPTION OF REGULARITY ON APPEAL.—Where there is nothing
in the record on appeal to show that the transcript and proceedings
before the magistrate were not properly authenticated or certified
and filed as required by section 869 of the Penal Code, or that it
was not a true statement of the testimony and proceedings taken
and had on the preliminary examination of the defendant, all
these things must be assumed on appeal in the absence of specific
objection in these regards in the trial court.

ID.—FORM OF DEPOSITION—SPECIFIC OBJECTION TO ADMISSION IN EVI-
DENCE—WAIVER OF OBJECTION.—While it is essential to the admissi-
bility on the trial of the deposition of a witness taken at the
preliminary examination that it should be taken down by question
and answer, as required by section 686 of the Penal Code, yet
where it appears from the deposition itself that the testimony is
in narrative form, an objection to its admission on that ground
must be specific, otherwise such objection will be deemed to have
been waived. A mere general objection that the deposition is
immaterial, irrelevant, and incompetent, and a motion to strike
it out on such general grounds is insufficient.

ID.—DEFENDANT AS WITNESS—CROSS-EXAMINATION WITHOUT PREJUDICE.
—The defendant, as a witness on his own behalf, testified that a
few months before the homicide he went to a certain house where
his wife and children were living for the purpose of seeing his
son, who had been injured. On cross-examination he was asked if
he had ever been to such house for two years before the visit
testified to, and answered "no." The question was objected to
on the ground that it was not proper cross-examination. *Held,*
that while ordinarily the question and answer might well prejudice
the defendant by carrying with it the implication that he had
unduly neglected his family, yet under the circumstances of this
case there could have been no such prejudice, as the evidence given
in support of the defendant's case showed his complete estrange-
ment from his wife during such period, and that during that time
he had frequent visits from his children.

ID.—INSANITY — INTIMATE · ACQUAINTANCE — WITNESS.—The determination of the question as to whether one is an "intimate acquaintance," and therefore competent under subdivision 10 of section 1870 of the Code of Civil Procedure to give an opinion as to the mental sanity of another, is necessarily to a great extent within the discretion of the trial court, and the ruling of that court will not be disturbed except where the evidence is such as to leave no just room for question that the discretion has been improperly exercised.

ID.—WITNESS FOR PROSECUTION — REDIRECT EXAMINATION.—On cross-examination by defendant of his daughter, a witness for the prosecution, she was asked whether she or her mother, sister, or brother had visited the defendant in prison, and answered in the negative. On redirect examination she was asked why she had not visited him, and, over objection, said that he had never requested it, and she thought he never cared to see her. *Held*, that in view of the cross-examination the redirect examination was probably proper, and in any event, in view of the evidence given in support of the defendant's case as to the relations between himself and his family, was without prejudice.

ID.—INSTRUCTION—DISTINCTION BETWEEN INSANITY AND INSENSIBILITY.—In a prosecution for murder in which the defense is insanity the court may properly instruct the jury as to the distinction between the diseased and deranged condition of the mental faculties rendering a person incapable of distinguishing between right and wrong in relation to the act with which he is charged, constituting the insanity which the law recognizes as a defense, and mere moral insensibility, passion, hatred, anger, etc., which do not constitute a defense, and caution them to observe the distinction. Such an instruction, if correct in matter of law, is not objectionable as showing a partisanship on the part of the court adverse to the defendant and his defense.

ID.—NEW TRIAL—MISCONDUCT OF JUDGE AND DISTRICT ATTORNEY—CONFLICT OF EVIDENCE.—A refusal to grant a new trial on the ground that the trial judge and district attorney had been guilty of misconduct prejudicially affecting the defendants' cause will not be interfered with on appeal, when the evidence in reference thereto is substantially conflicting.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

Joseph Clark, *in pro. per.*

Daniel O'Connell, and Louis P. Boardman, for Appellant.

U. S. Webb, Attorney-General; C. N. Post, Assistant Attorney-General, J. Charles Jones, and Lewis F. Byington, District Attorney, for Respondent.

ANGELLOTTI, J.—The defendant was convicted of murder in the first degree, and adjudged to suffer life imprisonment. · He appealed from the judgment, and from an order denying his motion for a new trial. Although judgment was pronounced in the lower court on May 27, 1899, the bill of exceptions was not settled therein until January 15, 1905, and the transcript on appeal was not filed until August, 1905. We have no means of ascertaining where the blame rests for this delay. The district court of appeal, by its decision given on such appeal, reversed the judgment and order; but within due time thereafter this court vacated that decision and ordered the cause to be heard and determined here (Const., art. VI, sec. 4), and the same has now been submitted for our consideration.

There can be no question as to the sufficiency of the evidence to sustain the verdict. The deceased, one Joseph T. Gross, between whom and the defendant considerable enmity had existed for a long time, was, on the evening of November 30, 1898, on duty at a station of the San Francisco fire department, standing with two or three other firemen at a rope stretched across the main doorway on the public street, when the defendant came along, and without a word being spoken by any one, pulled out his pistol and fired two shots at him. The first shot was fired while the deceased was facing defendant, and at very close range, the parties not being over a foot or two apart. The deceased turned away, and immediately the defendant fired a second shot at him, when, according to the defendant's own testimony, the deceased fell. He died almost instantly, without having spoken a word after the shooting. No other shot was fired by anybody. Upon the person of deceased were found two wounds. On his very cursory examination, the surgeon immediately summoned, and who found the man dead, saw only a gunshot wound over the liver on the right side. Others who were present immediately after the shooting saw the two wounds. There was no pretense on the trial that the defendant did not kill the deceased, the defenses urged being self-defense and insanity, and entirely

independent of the deposition of the autopsy surgeon, the evidence was such that it was impossible to reasonably escape the conclusion that the cause of the death of the deceased was one or the other or both of the shots fired by defendant. The evidence in support of the plea of self-defense was most shadowy and unsubstantial, and directly opposed by the evidence of the several eye-witnesses. The most that can be said for the plea of insanity is that the evidence upon that subject presented a substantial conflict, and under well-settled rules the finding of the jury thereon is conclusive here.

Complaint is made that the trial court erred in admitting in evidence the deposition of Dr. Gallagher, the autopsy surgeon, taken upon the preliminary examination of the defendant. Although several specific objections are made upon this appeal to such evidence, the only objection made in the trial court, in addition to a general objection of immateriality, irrelevancy, and incompetency, was that the defendant had the constitutional right to be confronted with the witness. As to this objection, the claim is that subdivision 3 of section 686 of the Penal Code, in so far as it permits testimony received on the preliminary examination of the defendant before a committing magistrate, and taken down by question and answer in the presence of the defendant, who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness, when authenticated and filed in the manner prescribed by section 869 of the Penal Code, to be read in evidence upon its being satisfactorily shown that the witness is dead, or insane, or cannot with due diligence be found within the state, is in violation of section 13 of article I of our constitution. This court has repeatedly held to the contrary. (*People* v. *Oiler,* 66 Cal. 101, [4 Pac. 1066]; *People* v. *Chin Hane,* 108 Cal. 597, 607, [41 Pac. 697]; *People* v. *Sierp,* 116 Cal. 249, 250, [48 Pac. 88]; *People* v. *Cady,* 117 Cal. 10, [48 Pac. 908]; *People* v. *Plyler,* 126 Cal. 379, 282, [58 Pac. 904].) The matter was exhaustively discussed in *People* v. *Sierp,* 116 Cal. 249, [48 Pac. 88], where it was pointed out by the court, speaking through Mr. Justice McFarland, that we have no constitutional provision entitling a defendant to be confronted with the witnesses against him, the only provision guaranteeing such right being the one contained in this very subdivision 3 of section 686 of the

Penal Code, where it is immediately followed by the exception and provision authorizing the reading of testimony taken on the preliminary examination in the manner and under the circumstances already stated. It was further shown that the constitutional provision relied on does not apply to testimony given at the judicial proceeding known as a preliminary examination, but refers only to "an ordinary extra-judicial deposition, taken, as it is called, *de bene esse.*" In view of the decisions upon the subject, the matter should be considered finally settled.

There is nothing in the record tending to show that the transcript of testimony and proceedings before the magistrate was not properly authenticated or certified and filed as required by section 869 of the Penal Code, or that it was not a true statement of the testimony and proceedings taken and had on the preliminary examination of defendant on this charge, and, therefore, in the absence of specific objection in these regards in the trial court, all of these things must be assumed. (See *People* v. *Buckley,* 143 Cal. 375, 383, [77 Pac. 169] ; *People* v. *Witty,* 138 Cal. 576, 578, [72 Pac. 177].) The only objection to the testimony now urged which appears to have any merit is that it appears from the testimony itself that it was not taken down "by question and answer," as the statute requires, but was in narrative form. We have no doubt that compliance with this requirement of the statute is essential to the admissibility on the trial of the so-called deposition of a witness taken at the preliminary examination. But no objection on that ground was specifically made at the time the testimony was offered, or before it was read in evidence, and it was stated to the court at the time, by counsel offering it, that it appeared to be in compliance with the law. In the absence of such specific objection, the court was warranted in assuming it to be in proper form, and, therefore, did not err in overruling the general objection made. While a motion to strike out the testimony was made after the reading, such motion was based only on the general ground before stated, and no exception was reserved to the ruling denying the motion. Under these circumstances, the defendant must be held to have waived this objection.

We, therefore, conclude that there was no error on the part of the trial court in the matter of this deposition. It is,

however, proper to say in this connection, that the testimony of this witness was, simply, that he held an autopsy on the body of the deceased, that he found two gunshot wounds thereon, and that the deceased came to his death from an internal hemorrhage following these wounds. It was so clearly shown by the other uncontradicted evidence that the cause of death was the shooting by defendant, that this deposition did not materially add to the case against defendant.

The defendant was a witness on his own behalf. He testified that, a few months before the homicide, he went to the house on Green Street, where his wife and children were living, for the purpose of seeing his son, who had just been severely injured by being thrown from a bicycle. On cross-examination he was asked: ''Have you been to the house on Green Street for two years before you went to see your son?'' and answered, over objection that the same was not cross-examination, ''No.'' The objection was good. There was nothing in the direct examination warranting this question on cross-examination, and the matter elicited thereby was of such a nature that under ordinary circumstances it might well prejudice the defendant, by carrying with it the implication that he had unduly neglected his family. But under the peculiar circumstances of this case, there could have been no such prejudice. The defendant and his wife had been living separate and apart for several years. The children were with the wife, and, up to the time of the boy's accident, had visited him at frequent intervals. The defendant's claim was that his wife had abandoned him and the family home by reason of the persuasion of the deceased, and was living apart from him, and associating with the deceased, in open defiance of his wishes in the matter. It was this that constituted the basis of his plea of insanity. The theory of his case, as evidenced by his counsel's opening statement and the evidence of his witnesses, was that the relations between himself and his wife had been absolutely and irrevocably terminated by his wife, acting under the influence of the deceased. Inasmuch as his children came to see him at his own house, it could not be discreditable to him that he should fail to call at the house occupied by the wife, between whom and himself all relations had been severed. Moreover, on the cross-examination of one of his daughters, defendant himself elicited testimony to the

effect that he was never in the house occupied by his wife from the time she left him until the accident to his son.

We cannot say that error was committed in allowing witness Strothers to give his opinion, as an intimate acquaintance, as to the sanity or insanity of defendant. The witness had been acquainted with the defendant for four or five years, and saw and talked with him frequently. As we have said before, the determination of the question as to whether one is an "intimate acquaintance," and, therefore, competent under subdivision 10 of section 1870 of the Code of Civil Procedure, to give an opinion as to the mental sanity of another, is necessarily to a great extent within the discretion of the trial court, and the ruling of that court will not be disturbed except where the evidence is such as to leave no just room for question that the discretion has been improperly exercised. (*People* v. *Suesser,* 142 Cal. 354, [75 Pac. 1093] ; *People* v. *McCarthy,* 115 Cal. 255, 258, [46 Pac. 1073].)

On cross-examination by defendant of a daughter, Miss Lottie Clark, a witness for the prosecution, she was asked whether she, or her mother, sister, or brother, had visited defendant in prison, and answered in the negative. The only possible object of this testimony was to show bias on the part of the witness and the others named against the defendant. On redirect examination, she was asked why she had not visited her father in prison, and, over objection, said that he had never requested it, and she thought he never cared to see her. In view of the cross-examination, this was probably proper redirect examination. However this may be, in view of the evidence given in support of defendant's case as to the relations between himself and his family, we do not see how this testimony could have prejudiced him. The same may be said of testimony of a similar nature given by the other daughter, which was undoubtedly erroneously admitted, there having been nothing in her cross-examination to warrant it.

The court instructed the jury quite fully and correctly upon the defense of insanity, and among other instructions on that subject, gave an elaborate one, wherein it was attempted to show the distinction between the diseased and deranged condition of the mental faculties rendering a person incapable of distinguishing between right and wrong in relation

to the act with which he is charged, constituting the insanity which the law recognizes as a defense, and mere moral insensibility, passion, hatred, anger, etc., which do not constitute a defense, and to caution the jury to observe the distinction. We find in this instruction no proposition that is not absolutely correct as a matter of law. The complaint made of it is that it is argumentative, and manifests such a strong partisanship adverse to defendant and his defense, as would lead the jury to infer that the court believed the defense of insanity here interposed was without foundation. We cannot assent to this conclusion. There is not in it the assumption of any fact, or, so far as the printed words show, the slightest intimation of any opinion on the part of the court, as to the merits of the defense in this case, and we cannot see that such was its general effect. It indicates no more than a commendable desire on the part of the court to have the jury thoroughly understand what is and what is not, in the eyes of the law, insanity constituting a defense in a prosecution for crime. The other instructions complained of were so manifestly correct as not to require notice here.

On the motion for a new trial, affidavits were presented in support of a claim that the trial judge and district attorney had been guilty of misconduct prejudicially affecting defendant's cause. If we assume, purely for the purposes of this decision, that such a claim may be urged in support of a motion for a new trial, and that the facts upon which it is based may be presented by affidavits, we find that all matters therein set forth as to which complaint might justly be made are controverted by the counter-affidavit of the district attorney, and that in regard thereto, a substantial conflict of testimony was thus made, which it was the province of the trial court to determine.

The judgment and order are affirmed.

Shaw, J., Sloss, J., Lorigan, J., McFarland, J., and Henshaw, J., concurred.

Rehearing denied.