[Crim. No. 4166.   Second Dist., Div. One.   May 3, 1948.]

THE PEOPLE, Respondent, v. EDWARD P.
WELLINGTON, Appellant.

Edward P. Wellington, in pro. per., for Appellant.

Fred N. Howser, Attorney General, and John F. Hassler, Deputy Attorney General, for Respondent.

WHITE, J.—In an information filed by the District Attorney of Los Angeles County defendant was accused in count 1 of the offense of issuing a check without sufficient funds or credit, with intent to defraud (Pen. Code, § 476a), and in count 2 he was charged with the crime of grand theft. Trial by jury was duly waived and the cause was submitted to the court on the transcript of the testimony adduced at the preliminary examination with the right reserved by both the People and the defendant to present additional testimony, and of which right both availed themselves.

At the conclusion of the trial the court found the defendant guilty as charged in both counts. Defendant appeals from the judgment and "denial of motion for new trial." Because no motion for a new trial was interposed, the attempted appeal from a denial thereof must be dismissed.

Epitomizing the evidence as reflected by the record, it appears that Fridolf W. Torstenson was the owner of a 1942 Cadillac sedanette automobile. His wife had told a taxi driver that her husband desired to sell the vehicle in question. On October 25, 1946, defendant came to her home concerning the purchase of the automobile. Very little conversation was had and she took defendant to the rear of the house to view the vehicle while her husband remained inside the house. They were unable to start the automobile and the sales price was not then discussed. Defendant stated that he would return later. Mrs. Torstenson testified that her husband had been a patient at the Camarillo State Hospital from October 3, to October 23, 1946. On October 27, Mrs. Torstenson went to Point Arguello where she remained until the night of October 29.

On the afternoon of October 28, defendant returned to the residence where he met Mr. Torstenson. It is conceded that upon this occasion Mr. Torstenson sold the Cadillac automobile to defendant, delivered to him the pink slip therefor, received a check for $3,400, and that at the time said check was issued

as well as when it was presented for payment defendant did not have sufficient funds in or credit with the bank upon which it was drawn, his balance being $22.74.

As to the circumstances surrounding the issuance of the check the testimony is in direct conflict. Mr. Torstenson testified that when he received the check in payment for the automobile the defendant represented to him that the same "was good." That nothing whatever was said to the effect that Mr. Torstenson "would hold the check or that it would not be good when it was presented."

The defendant testified that he agreed to and did purchase the automobile from Mr. Torstenson; that the agreed price was $3,450; that Mr. Torstenson agreed to and did accept $50 in cash and a postdated check for $3,400; that he told Mr. Torstenson that he would be compelled to finance the vehicle before he could deposit sufficient money in the bank out of which the check could be paid; that he would deposit the sum of $3,400 in the bank to cover the postdated check on or before 2 p. m. of October 29. That Mr. Torstenson informed him that the O.P.A. ceiling price on the automobile was in excess of $3,800.

Defendant further testified that on October 29, he went to the office of a finance company where he obtained a loan of $1,451.60 on the vehicle. That he was informed by the finance company that he was paying too much for the automobile and was advised to take the matter up with the O.P.A. That when he contacted the O.P.A. he was advised that the ceiling price on said vehicle was $1,571.65. He thereupon filed a complaint against Mr. Torstenson with the O.P.A. That being unable to locate Mr. Torstenson he wired him by Western Union a telegraphic money order in the sum of $1,521.65, which, plus the sum of $50 paid the preceding day, constituted the legal sales price of the automobile under existing O.P.A. regulations.

Mr. Torstenson denied the receipt by him of any cash payment and also denied that any discussion was had regarding the O.P.A. ceiling price on the vehicle.

It was conceded at the trial that on October 29, defendant sent Mr. Torstenson the foregoing telegraphic money order, that the latter refused to accept the same, and the amount thereof was refunded to defendant. That simultaneously with the telegraphic money order, defendant sent a telegram to Mr. Torstenson reading in part as follows:

"The money order paid you here is from Edward P. Wellington at Glendale, California . . . The price, $3450.00,

for your Cadillac, is over the ceiling, the same being $1571.65. You overcharged me $1875.35. The check for $3400.00, will not be honored. $1521.65 is the balance due you, $50.00 being paid by cash. Any other information you desire may be obtained from my attorney, Bert Rhine, MIchigan 0841, or the O.P.A. office in Glendale, where I have filed a complaint against you.''

It was also established at the trial that on December 4, 1946, after the ceiling price had been lifted, defendant sold the automobile in question to one Paul Benson for $2,550.

An investigator for the O.P.A. testified that on October 29, 1946, when the transaction between Mr. Torstenson and the defendant was consummated, the ceiling price for the automobile involved was $1,562.82.

It was stipulated at the trial that at no time did defendant make any effort to restore the automobile to Mr. Torstenson and rescind the transaction.

Bertrand Rhine, who was the attorney to whom defendant referred Mr. Torstenson in his telegram of October 29, testified that following his conversation with Mr. Torstenson he advised defendant that ''Mr. Torstenson wanted the money or wanted his car back.''

Although defendant was represented by an attorney at his trial, he appears on this appeal without benefit of counsel.

He first urges that neither at the preliminary examination nor at the trial was the corpus delicti proven.

As to the essential elements of the offense denounced by section 476a charged in count 1, they are: (1) the intent to defraud, (2) the . . . drawing . . ., (3) of a check . . ., (4) upon a bank . . ., (5) a lack of sufficient funds or credit with the drawee at the time the check . . . is made . . ., and (6) knowledge on the part of the accused of such lack of funds or credit.

That the prosecution proved the last five of the foregoing elements is conceded. The intent to defraud, which is the gist of the offense, must in most, if not in all cases, be proven by the circumstances surrounding the transaction in question. While in the case at bar the facts concerning the elements of intent to defraud are in sharp conflict, we are persuaded that the record contains sufficient proof thereof, not only to establish the corpus delicti but to support the decision of the court.

There is testimony that nothing whatever was said about the O.P.A. ceiling price or that appellant did not have sufficient funds in or credit with the bank at the time he issued the check. Mr. Torstenson testified directly and unequivocally that appellant, in reference to the check, "stated that it was good"; that nothing was said about the appellant financing the vehicle in order to obtain funds with which to meet the check. Mr. Torstenson testified further that he had no knowledge the check was postdated until advised thereof by his father-in-law on the day following its issuance. That the reason he accepted the check was because appellant stated to him that he "owned this plastic company," and "was connected with this Orange Cab Company, either as owner or part-owner." When asked by the court, "When he gave you the check he told you, you say, at that time the money was in the bank?," Mr. Torstenson answered, "Yes, absolutely. He stated that if it had not been past banking hours we could have run down and got the money."

Added to the foregoing is the conduct of appellant subsequent to the issuance of the check. When he applied for a loan on the automobile he obtained only $1,400, which was some $2,000 less than the amount of the check. He then sent Mr. Torstenson a telegraphic money order for $1,521.65 which the latter refused, and which was thereafter returned to appellant, who made no further effort to contact Mr. Torstenson, was not at the address which he gave Mr. Torstenson, and could not be located after a diligent search by the latter and his wife. A little more than a month later, appellant sold the automobile for $2,550. At no time did appellant make any effort to rescind the transaction or restore the automobile to Mr. Torstenson. This testimony was entitled to be considered by the trial judge as indicating the guilty knowledge of appellant, and as affecting the question of his good intent in passing the check.

From all the evidence adduced in the case, the court was justified in drawing a reasonable inference that appellant was aware of the amount of the O.P.A. ceiling on Cadillac automobiles, that he gave his check for $3,400 in order to obtain title to the automobile, financed the same, and then forwarded to Mr. Torstenson the O.P.A. ceiling price of $1,521.65 rather than $3,400, the price he had agreed to pay for the automobile, and for which he had given his check. His further conduct in concealing himself from the Torstensons and failing to return the automobile tends to fortify the inference and con-

clusion that his actions were all part of a scheme to obtain the automobile by contracting to pay one price, issuing a fictitious check in payment thereof, and then tendering another amount, which he knew at all times was the O.P.A. ceiling price. The foregoing facts were ample to justify an inference by the trial court of appellant's guilt under count 1 of the information.

As to count 2, the foregoing recital of the evidence fully justifies the trial court's conclusion that appellant obtained the automobile in question by false pretenses and was, therefore, guilty of the crime of grand theft.

Appellant earnestly urges that there is a failure of proof to sustain the convictions in the case now engaging our attention because all of the circumstances relied upon as incriminating are equally compatible with innocence. To reach such a conclusion, however, the testimony must be viewed in the light of the testimony given by appellant which simply raised a conflict with that given by the witnesses for the prosecution.

Ordinarily, we would dismiss this contention with the mere statement that under the long established and familiar rule, where there is a conflict in the evidence, or even where the circumstances are sufficient to as reasonably justify an inference of innocence, if the circumstances proven, contradicted or uncontradicted, reasonably justify the inference of guilt, an appellate tribunal will not disturb the conclusion arrived at by the constitutionally established arbiters of the facts—in this case the trial judge. However, since appellant appears on this appeal in propria persona we are disposed to quote the rule, many times reiterated by the reviewing courts of this state, and set forth in *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778], reading as follows: ''The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground' of insufficiency of the evidence, 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. The determination of a charge

in a criminal case involves proof of two distinct propositions: First: that the offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. (*People* v. *Perkins*, 8 Cal.2d 502 [66 P.2d 631] ; *People* v. *Tom Woo*, 181 Cal. 315 [184 P. 389] ; also, *People* v. *Green*, 13 Cal.2d 37 [87 P.2d 821] ; *People* v. *Latona*, 2 Cal.2d 714 [43 P.2d 260] ; *People* v. *Tedesco*, 1 Cal.2d 211 [34 P.2d 467] ; *People* v. *Wilson*, 33 Cal.App.2d 194 [91 P.2d 207] ; *People* v. *Bresh*, 33 Cal.App.2d 161 [91 P.2d 193].) ''

For the foregoing reasons the attempted appeal from ''the denial of motion for new trial'' is dismissed. The judgment is affirmed.

Doran, Acting P. J., and Bartlett, J. pro tem., concurred.