[Crim. No. 8201. Second Dist., Div. One. Aug. 30, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. FERGUS GREENWOOD, Defendant and Appellant.

Max A. Knepper and Irwin Lee for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Stanley X. Cook, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of a violation of section 476a of the Penal Code (writing a check without sufficient funds), and the order denying a motion for a new trial.

In an information filed in Los Angeles County on October 4, 1961, it was charged in effect that appellant on March 6, 1961, unlawfully drew and delivered to Karl Fandrich a check for the payment of $300 upon the United California

Bank, knowing at the time that there were not sufficient funds in the bank to meet the check, and further that he intended to cheat and defraud Fandrich and the bank. Appellant pleaded not guilty and a trial was had before a jury. He was found guilty as charged. A motion for a new trial was made and denied. Appellant was then sentenced to six months in the county jail, sentence was suspended and he was placed on probation for three years, a part of the terms thereof being that he make restitution, that he support his dependents, seek employment, abstain from drinking alcoholic beverages, and do away with any checking account.

The appeal is from the judgment and from the order denying the motion for a new trial.

A résumé of some of the facts is as follows: Fandrich was the manager of Stan's Playroom (a bar) located at the corner of Sunset and Vine Streets in Hollywood. About 6:30 or 7:00 p. m. of March 6, 1961, appellant and a Mr. Swan came to the bar. Swan was an employee of appellant and they came to the establishment approximately six nights a week. Swan asked Fandrich if he had enough money to cash a $300 check. The check in question, dated March 6, 1961, bore the name of British Continental Cars across the top, was drawn on the Hollywood office (1600 Vine Street) of the United California Bank, payable to Cash in the sum of $300, and purportedly signed by appellant as the maker. Fandrich did business with the Bank of America which was located about a block from the place of business. Fandrich did not look at the check to see what particular bank it was drawn upon. Fandrich at first paid little attention to Swan and appellant. Up to the time of presenting the check appellant had paid with cash for the drinks which he had consumed. The check was pushed forward on the bar toward Fandrich. He picked it up and saw that it was for $300 and stated, in effect, that he did not have that much money at that time, put the check down on the bar and served some other customers.

Appellant talked with Fandrich again about the check and indicated in effect that Fandrich could cash the check and give him part of the money then and the balance of the money the next day. Fandrich apparently had known of some of appellant's bad checks in the past and inquired if that particular check was good and appellant replied that it was good. Fandrich thereupon took $60 from his own funds and tossed such money onto the bar in front of appellant. Fandrich put the check in his pocket. Nothing was said at the moment about

the balance of the payment on the check. Swan and appellant then spent a considerable portion of the $60. The $300 check was not placed with the other deposits of the place of business. It was the practice of Fandrich, when given a sizeable check, to take it, give the person a part of the money and tell him to pick up the balance due the next day after Fandrich had cashed the check at the bank. On the next day Fandrich went to the place of business (bar) and later in the course of events went to the bank at Sunset and Gower (United Bank) and asked the teller to verify the check. The teller said, "Do you want to deposit it?" and Fandrich answered, "No, I can't do it here. That is not my bank" and then placed the check back into his pocket. The teller never did answer whether or not the check was good. Fandrich then went to the Bank of America and deposited the check to his account, thinking that the check was good. On the evening of March 7 Fandrich gave to the appellant the balance of the money on the check.

A bank teller of the United California Bank related that appellant had an account in that bank but that never during the month of February or March 1961 did the account of appellant have $300 in it and that on March 6, 1961, the account was overdrawn $6.07. No credit arrangements had been made by appellant with the bank to cover overdrawn checks.

A police officer to whom appellant had talked stated that appellant was shown the $300 check and was asked if he had written it and that appellant had admitted writing it and had further indicated that he knew there was not enough money in the bank to cover it and that he had not received any money for it.

Appellant now asserts that the evidence does not support the judgment, that Fandrich's testimony was inherently improbable and that there was no evidence that the check was delivered by appellant or that he had any intent to defraud. Further, that it was error to limit cross-examination of Fandrich with reference to his personal bank account and his income and that appellant was improperly cross-examined concerning a check which was not the subject of the information in question, and lastly that he did not have a fair trial because of an interruption during the trial.

The essential elements of the offense charged are (1) the making, drawing, uttering or delivering of the check with (2) insufficient funds or credit with the drawee bank at the time the check was made, (3) knowledge of the lack of suffi-

cient funds, (4) and the intent to defraud. (*People* v. *Reichenau,* 173 Cal.App.2d 584, 586 [343 P.2d 603] ; *People* v. *Wellington,* 85 Cal.App.2d 310, 313 [193 P.2d 30].)

Appellant testified that he wrote the check and a police officer as heretofore indicated testified that the appellant had told him that he had written the check. ■ With reference to the delivery of the check it was not required that it be shown that appellant physically and literally passed the check from his hand to the hand of the victim. The check in this instance, drawn by appellant, was placed on the bar and pushed forward toward Fandrich. Appellant was told by Fandrich that he did not have enough money at that time to cash the check and later appellant told Fandrich in effect to cash the check and give him some of the money the next day, which was done. It is perfectly reasonable to conclude from the evidence that appellant presented the check to Fandrich and that he received $60 on account thereof at the time of the delivery and the balance of the money the next day.

The bank teller's evidence of the status of the appellant's account indicates that at no time close to March 6, 1961, could the check have been good. Furthermore the appellant knew of the deficiency in the account. (*People* v. *Adams,* 171 Cal. App.2d 483, 486 [340 P.2d 677] ; *People* v. *Harding,* 171 Cal. App.2d 465 [340 P.2d 656] ; *People* v. *Whisenhunt,* 155 Cal. App.2d 534, 538 [318 P.2d 153].)

■ The intent to defraud is inferred from all of the surrounding circumstances. There is nothing unreasonable in the implied findings of the jury on this or any other issue in this particular case. (*People* v. *Rush,* 172 Cal.App.2d 431, 437 [341 P.2d 788].)

■ Appellant seems to argue to this court that the jury should have believed him rather than the witnesses for the prosecution. The jury determines the credibility of the witnesses. The conflicts in the testimony were obviously resolved against the appellant. We are bound by that determination.

■ Fandrich stated that he had certain money at his home from which he sometimes cashed checks. Appellant sought to impeach Fandrich by cross-examining him with reference to his personal bank accounts and the money which he kept at home. Code of Civil Procedure section 2051 provides:

"A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad,

but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony unless he has previously received a full and unconditional pardon, based upon a certificate of rehabilitation.''

 A witness cannot be impeached by evidence of particular wrongful acts. (*People* v. *Chin Hane,* 108 Cal. 597, 606-607 [41 P. 697] ; *People* v. *Howard,* 166 Cal.App.2d 638 [334 P.2d 105].)

 Even if Fandrich had stolen the money which he gave to the appellant it is questionable that it would be proper to impeach Fandrich by such a showing. (*People* v. *Nichols,* 2 Cal.App.2d 99, 101-102 [37 P.2d 710].) Whether Fandrich had his finances in order is not the question involved in this particular case and reference thereto is immaterial. (*People* v. *Spreckels,* 125 Cal.App.2d 507, 514 [270 P.2d 513].) In any event no prejudice to the appellant was shown.

 Appellant further contends that without the citation of any authority therefor it was error for the prosecutor to cross-examine him with reference to a $17.50 check which he previously had written. It appears that the question was directed to the issue of appellant's knowledge of the status of his bank account. (*People* v. *Cuthbertson,* 176 Cal.App.2d 393 [1 Cal.Rptr. 435] ; *People* v. *Spaise,* 193 Cal.App.2d 294, 298 [14 Cal.Rptr. 167].) Furthermore the evidence could have been for the purpose of showing the fraudulent intention of appellant in issuing the particular check. (*People* v. *Sanderson,* 183 Cal.App.2d 544, 547 [6 Cal.Rptr. 330].) There was no prejudicial error in the asking of such questions.

 The trial was interrupted by the sudden illness of the prosecutor. The judge suggested at the time that a mistrial be declared. Counsel for the People stipulated that a mistrial could be declared, however appellant indicated that he would prefer to have the matter continued to a day certain, which was then ordered by the court. Having chosen at the time of trial to take a continuance appellant cannot now be heard to complain that a mistrial should have been declared.

 The remaining contentions of the appellant are raised here for the first time and we will not consider the same. (*People* v. *Jones,* 191 Cal.App.2d 478, 483 [12 Cal.Rptr. 777] ; *People* v. *Duncan,* 175 Cal.App.2d 372, 383 [346 P.2d 521].)

There is no showing of prejudicial error to the appellant in the record.

The order denying the motion for the new trial and the judgment are and each is affirmed.

Wood, P. J., and Lillie, J., concurred.