[Crim. No. 12906.    Second Dist., Div. Four.    Jan. 23, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT EARL JOHNSON, Defendant and Appellant.

Robert Earl Johnson, in pro. per., and Herbert A. Moss, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—The information contains two counts of issuing checks without sufficient funds (Pen. Code, § 476a): count I, a check for $113.75 dated June 16, 1964; count II, four checks, for $66, $39, $10 and $20, and dated June 12, 4, 14 and 23, 1964, respectively. A jury found defendant guilty as charged. On June 16, 1965, proceedings were suspended and he was placed on probation for three years, the first 60 days to be spent in jail.

The notice of appeal refers to ''the judgment of conviction and sentencing.'' Since there is neither a judgment nor sentence, the appeal must be from the order granting probation, which is deemed a judgment for the purpose of appeal (Pen. Code, § 1237, subd. 1).

Defendant first filed an opening brief in propria persona. He then requested the court to appoint an attorney to represent him on appeal. Such an appointment was made on February 24, 1967. On April 5 the court received from defendant a communication reciting that he had discharged that attorney retroactive to March 10, 1967. Counsel nevertheless, pursuant to his appointment, has filed a brief arguing that the judgment should be reversed because of insufficiency of the evidence to establish knowledge of lack of funds when the checks were passed. The court has reviewed the record and has considered all of the contentions made either by counsel or by defendant personally.

The evidence shows that defendant's checking account had been closed and that all five checks were delivered as charged. Defendant testified on his own behalf and denied any intent to defraud. Nevertheless, from the circumstances, the jury was entitled to infer that defendant had such intent. The circumstances include the following:

(a) Ordinarily a person knows how much he has on deposit. This particular defendant showed no lack of intelligence or education. He testified that he had attended two colleges and had had three years' education in accounting.

(b) Bank records showed a series of small checks written by defendant without sufficient funds in May 1964.

(c) The bank records showed that on May 19, 1964, the bank wrote to defendant warning him his account would be closed. On May 25 the bank also sent him a copy of his ledger sheet, showing a closing overdraft of $21.20. The checks involved in this prosecution were passed between June 7 and June 23.

(d) Defendant had stamped upon some of his checks the name "E. Robert Johnson and Associates, Financial Consultants." He admitted that he had no associates, and had not yet started his consulting business. It was reasonable for the jury to infer that this business name was employed for the purpose of creating a false impression of financial responsibility.

(e) Defendant testified that he had mailed to his bank two money orders, in the amounts of $100 and $75 respectively, in the latter part of April or early May, which never were credited to his account. The jury was entitled to reject this evidence in the light of these additional circumstances:

(1) Defendant offered no corroboration. He said he had stubs at home, but failed to produce them. He could not remember where he had purchased the money orders.

(2) The $175, even if received by the bank, would not have justified all of the checks which defendant wrote in June.

Fraudulent intent is ordinarily proven by circumstances, and where, as here, the inference drawn by the jury is a reasonable one, it cannot be upset by a reviewing court. (*People* v. *Costello,* 223 Cal.App.2d 748, 751 [36 Cal.Rptr. 155].)

Defendant's personally written brief asserts that he was forced to trial at a time when he was "under Doctor's care." The record shows that the information was filed July 16, 1964. Before the trial began on May 20, 1965, proceedings were postponed 17 times, at least 12 of which were at defendant's request or due to circumstances caused by defendant. During that period of time defendant was at large on his own recognizance except during one period when he was serving a jail term for an unrelated offense.

Prior to January 27, 1965, defendant appeared in the trial court without counsel, though there is no contention that he had not been duly advised of his rights. On several occasions

postponements were granted upon defendant's representation that he intended to employ counsel. The minutes for January 26, 1965, recite: "Defendant does not have private counsel and refuses to accept the Public Defender." On January 27 the public defender was appointed to represent defendant. On February 17 upon defendant's motion the public defender was relieved, defendant was substituted in propria persona, and the trial date continued again to allow time for preparation.

On March 17 a trial commenced, with defendant representing himself. On March 19 defendant agreed to accept the public defender, who was then reappointed by the court. On motion of the defense, a mistrial was declared and the case put over to April 27 to allow counsel time for preparation.

On April 27 defendant moved for and obtained a postponement to May 19 upon the ground of illness.

On May 19 a motion for continuance upon the ground of illness was denied. The case trailed until May 20, awaiting an open court.

The case was called for trial in the morning of May 20, 1965, and transferred to another department for trial commencing at 1:45 p.m. At 1:45, when the case was called in the trial department defendant presented to the court a note from a physician which stated that defendant "is under my care for headaches, due to trauma and has received medication for same." The note was unsworn, and it did not say that the defendant was unable to go to trial or that his condition would handicap him in any way. The court stated that it would not grant a postponement upon the basis of that note, particularly after the many delays which defendant had requested and obtained. The court added that if the doctor would come in and testify concerning defendant's condition, the court would hear him. The trial proceeded through Friday, May 21, and Monday, May 24, when the verdict was returned. No proof was offered concerning defendant's claimed illness.

Under the circumstances it was not improper for the court to proceed with the trial.

■ Defendant also contends that he was "denied counsel of his own choosing." A reference to the record is enough to dispose of that disingenuous claim.

The May 20 trial began with the request for a continuance which has been described above. When that was denied,

defendant moved to dismiss the public defender upon the asserted ground ''He has not my interest at heart.'' The trial court stated that in its opinion defendant was not capable of representing himself. The court pointed out that it had had the opportunity to observe defendant upon many occasions and to read many documents prepared by defendant; and that although defendant was sane he was unstable.

On May 21, after the People's case in chief had been presented, and defendant had been sworn as a witness on his own behalf, he suddenly announced ''I refuse to testify because I am not represented by counsel. I dismissed you yesterday.''

The trial court then excused the jury temporarily and reviewed for the record the procedural history of the case. The court concluded: ''You asked that the Public Defender be relieved at that time [May 20], and I denied it, on the grounds that you could not properly and adequately represent yourself, and I think it is quite obvious that you couldn't, from the state of this record, from my observations of you in Department 100, from the observations of Judge Clifton during the time that you were in his court [the March mistrial], which he has conveyed to me orally, during the time that you were trying to select a jury, the way that the jury was being selected, the insulting questions that were asked of the prospective jurors; it was obvious that you were hurting your own cause and that it would reduce the trial to a sham or a farce.

''I am fully convinced that to allow you to represent yourself would reduce the trial to a sham or a farce. . . .

''From your conduct in the jail, your conduct in Court, part of which I have observed personally, I am fully convinced and unequivocally find that you are not capable of representing yourself.

''For all of these things, you will continue to be represented by the Public Defender.''

The court then explained in detail defendant's option to testify, subject to cross-examination, and his privilege to refuse to testify. Defendant was given a recess to think about it.

Following the recess defendant gave his testimony.

''The defendant in a criminal case has the constitutional right to waive counsel and represent himself if he knowingly and intelligently elects to do so.'' (*People* v. *Maddox*, 67 Cal.2d 647, 651 [63 Cal.Rptr. 371, 433 P.2d 163].) But this

does not mean that a defendant may appear by counsel and then, without advance notice, when the case is called, discharge his attorney as a device to force a postponement of the trial. (See *People* v. *Carter,* 66 Cal.2d 666, 670 [58 Cal.Rptr. 614, 427 P.2d 214] ; *People* v. *Collins,* 242 Cal.App.2d 626, 636 [51 Cal.Rptr. 604] ; *People* v. *Stewart,* 240 Cal.App.2d 1, 5 [50 Cal.Rptr. 26].)

The defendant had had 10 months in which to employ an attorney of his own choosing but had failed to do so. Thus there is no basis for any contention that defendant was denied the opportunity to employ counsel. Defendant's courtroom behavior demonstrated to the court that he was incapable of presenting his case in a proper manner. Defendant's demand for the dismissal of the public defender could only be regarded as either an impulsive act, not in his best interest, or as a deliberate attempt to create confusion. The trial court's remarks indicate that it gave the defendant credit for good faith, but concluded that defendant's expressed desire did not reflect an informed and intelligent choice. Such a finding, when supported in the record, calls for a denial of a defendant's motion to dismiss his attorney. (*People* v. *Carter, supra; People* v. *Stewart, supra.*)

Prior to the trial, defendant had expressed his desire to be represented by the public defender. Under the circumstances, the trial court was not required to accede to defendant's sudden change of heart at the beginning of and during the trial. (*People* v. *Evans,* 211 Cal.App.2d 534, 539 [27 Cal.Rptr. 304] ; see *People* v. *Thomas,* 58 Cal.2d 121, 131 [23 Cal.Rptr. 161, 373 P.2d 97].)

This court has reviewed the record and is satisfied that defendant was fairly convicted.

The judgment (order granting probation) is affirmed.

Jefferson, J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 28, 1968.