[Crim. No. 37923. Second Dist., Div. One. Sept. 30, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ROY E. SWANSON, Defendant and Appellant.

COUNSEL

Paul Arthur Turner, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Richard D. Marino, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HANSON (Thaxton), J.—**

BACKGROUND

By consolidated information, defendant Roy E. Swanson (hereinafter defendant and/or Swanson) was charged in counts I and II with grand theft in violation of Penal Code section 487, subdivision 1. In count III defendant was charged with issuing a check without sufficient funds, a violation of Penal Code section 476a, subdivision (a).

Defendant entered a plea of not guilty. His request to act as cocounsel for his defense was granted. Trial was by jury. Defendant's motions for dismissal due to the People's failure to prosecute were denied.

Defendant was found guilty as charged. His ex parte request for bail was denied. His motion to have the public defender relieved as counsel and to proceed in pro. per. was granted. Defendant's motions for judgment of acquittal and for new trial were denied. Probation was denied. Defendant was sentenced to state prison for a total term of four years four months. The court imposed the high term of three years as to

count I, the base term; it also imposed a consecutive term of eight months (one-third of the middle term of two years) for count II and a consecutive term of eight months (also one-third of the middle term of two years) for count III. Defendant was given credit for presentence time and his motion for stay of execution of sentence pending appeal was granted; bail on appeal was set at $175,000.

Defendant appeals from the judgment of conviction.

## FACTS

The following evidence was adduced below. Three individuals, Cox, Collins and Roach, had formed C.C. & R., a civil engineering firm, incorporated both in California and Arizona, for the purpose of land planning. Defendant and his company, RES Associates (actually a sole proprietorship), had been retained by the corporation to handle its tax and financial matters in November 1978. Defendant had represented himself as a certified public accountant and handed out business cards identifying himself as a certified public accountant, which he was not.

Companies such as C.C. & R. are required by law to deposit with the Internal Revenue Service (hereinafter the IRS) the taxes which are withheld from employees' wages—"advance payroll deposits." Such deposits are made periodically during 3-month periods, and a tax form is due within 30 days of the end of each fiscal quarter. One of defendant's responsibilities was to make these deposits, although he was not authorized to or was not requested to advance the tax monies to the corporation or collect reimbursement from the corporation. Ordinarily, the withholding taxes were deposited by the company in a designated bank account and the bank would then forward the funds to the government.

Between November 1978 and April 1979 C.C. & R. issued several checks at defendant's request, payable to RES Associates, representing the amounts of withholding taxes which were to be forwarded to the IRS. The parties had also agreed that defendant was to receive $90 per hour from the corporation for his financial advice and services. During this period, defendant did perform some services for the corporation.

On April 25, 1979, defendant met with the principals of C.C. & R., and they requested him to give them the receipts for the withholding taxes which defendant was supposed to have forwarded to the IRS. Defendant told the principals that he had the receipts in his possession and

that he would give them to the corporation "sometime." Defendant's contract with C.C. & R. was terminated at the meeting because of his failure to pay the withholding taxes.

No withholding taxes were deposited by defendant or anyone else with the IRS on behalf of C.C. & R. in December 1978 or in January, February or March of 1979. The return due for the final quarter of 1978 on January 31, 1979, was not timely filed. The balance owing for the last quarter of 1978 was $8,682. The balance owed for the first quarter of 1979 totalled $21,398.83. (In addition, the Arizona corporation owed $6,763 for the final quarter of 1978 and $10,357 for the first quarter of 1979.) When the principals of C.C. & R. discovered the delinquency situation, they hired Leonard E. Aron, an attorney and certified public accountant, to assist them in straightening the matter out. C.C. & R. filed the delinquent return on April 30, 1979. Aron testified at trial that it was uncommon for an accountant to direct a client company to make withholding tax deposit checks payable to the accountant. There was additional testimony that checks in substantial amounts were drawn from the corporate account at Bank of A. Levy and made payable to RES Associates, but deposited by defendant in his personal account; December 8, 1978—$1,481.30; January 8, 1979—$2,480.58; January 26, 1979—$2,817.08; and February 15, 1979—$5,258.68. Thus was concluded the prosecution's case-in-chief as to count I.

Counts II and III concerned defendant's activities with respect to an individual named Jack Morgan, who retained defendant in January 1979 to handle Morgan's tax matters. In April 1979 defendant sent Morgan a bill for $1,009, $832 of which purportedly were taxes advanced by defendant for Morgan. Morgan paid the bill, but it developed that defendant had not filed either a tax return or a request for extension for Morgan. In May 1979 defendant asked Morgan to loan him $2,000, which Morgan did. Defendant gave Morgan a check in repayment dated May 22, 1979, which was later returned marked "not sufficient funds." There was testimony that on March 29, 1979, the balance in defendant's bank account was $458.14, and that defendant made no deposits in the account after that date, and before defendant issued the check to Morgan for $2,000.

Defendant testified on his own behalf. He admitted that he had deposited to his account funds received from C.C. & R. totalling more than $38,000. He explained that he had "offset" the withholding tax monies against funds he declared were owed to him by the corporation

for financial services which were not paid and which defendant believed would not be paid voluntarily in the amount of $40,000. Apparently defendant did not produce copies of any billings by him to the corporation; on rebuttal, witness Collins, one of the principals in the corporation, testified to receipt of only one billing from defendant for services rendered for 13.1 hours at $90 per hour.

ISSUES

██ On appeal defendant Swanson contends (1) that the trial court's examination of him during his testimony was, in effect, judicial misconduct which prevented him from having a fair jury trial; (2) that there was insufficient evidence with respect to count III because there was no proof that defendant knew he did not have sufficient funds in his bank account to cover the $2,000 check he had issued to Morgan; (3) that the trial court's refusal to strike certain references in Morgan's testimony at trial to defendant's having been in jail in May 1979 constituted reversible error; and (4) that he was improperly sentenced because of the trial court's failure to state adequate reasons for imposing the high term on count I and giving consecutive sentences on counts II and III.

DISCUSSION

I

The record discloses that the trial judge did engage in extensive examination of the defendant while defendant was testifying at trial; the record also shows that the trial judge questioned other witnesses. The defense objected at one point without specifying any grounds for objection. The trial judge himself explained to the jury that "I think to put this case in its simplest light I want the jury to be aware the questions I am asking are only to try to get the information to you and not for my feelings about this case."

██ It is well settled that "[a] trial judge may examine witnesses to elicit or clarify testimony . . . [but] must not become an advocate for either party or under the guise of examining witnesses comment on the evidence or cast aspersions or ridicule on a witness." (*People* v. *Rigney* (1961) 55 Cal.2d 236, 241 [10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.3d 186]; see also *People* v. *Corrigan* (1957) 48 Cal.2d 551 [310 P.2d 953].) ██ Defendant claims that the judicial intervention in

the case at bench was prejudicial to him; based upon our review of the record, we disagree. Defendant was not singled out; other witnesses answered questions put by the court. Nor was specific objection made to any question from the bench.

The prosecution below involved reference to corporate structure, tax problems and procedures, and regulations of the IRS. At a point where considerable confusion had been generated by both the prosecution and the defense, the trial judge stepped in and attempted to clarify matters for the jury. We perceive no advocacy in his questioning. In our view he was meeting his established obligation to seek the truth (*People* v. *Rigney, supra*, 55 Cal.2d 236, 241; *People* v. *Corrigan, supra*, 48 Cal.2d 551; see also *People* v. *Ham* (1970) 7 Cal.App.3d 768, 781 [86 Cal. Rptr. 906]) and no error occurred.

## II

There is no merit to defendant's contention that there was insufficient evidence to support his conviction on count III, which charged him with issuance of a check without sufficient funds, prohibited by Penal Code section 476a, subdivision (a).

As is explained in *People* v. *Greenwood* (1962) 207 Cal.App.2d 300, 303-304 [24 Cal.Rptr. 337], the essential elements which must be proved to show a violation of this section are "(1) the making, drawing, uttering or delivering of the check with (2) insufficient funds or credit with the drawee bank at the time the check was made, (3) *knowledge of the lack of sufficient funds*, (4) and the intent to defraud. [Citations.]" (Italics added.)

Defendant specifically claims that there was no proof that he knew he did not have $2,000 in his bank account when he gave the check to Morgan. Knowledge of insufficient funds may be proved by circumstantial evidence as well as direct evidence. As *People* v. *Johnson* (1968) 258 Cal.App.2d 165, 166 [65 Cal.Rptr. 441], observed: "[O]rdinarily a person knows how much he has on deposit"; the *Johnson* case involved, as does the instant case, a defendant who was educated enough to keep track of his financial affairs, a circumstance the *Johnson* court found important.

In *People* v. *Green* (1980) 27 Cal.3d 1, 55 [164 Cal.Rptr. 1, 609 P.2d 468], the California Supreme Court declared that "[w]hen the suffi-

ciency of the evidence is challenged on appeal, the court must review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." In the instant case, defendant's balance was far below the amount required to pay the check at least two months prior to its issuance; he had made no further deposits. While he disclaimed receipt of his March 29 bank statement, the jury was entitled to reject his testimony in that respect, and to regard as evasive his testimony that he did not know how much money he had on deposit when he gave the check to Morgan. The jury could reasonably infer from the adduced testimony that defendant did indeed know his funds were insufficient to cover the check. We find no error.

### III

Morgan, the victim in counts II and III, referred on two occasions, while testifying concerning the circumstances of his loan to defendant of $2,000 that defendant had secured the loan because he was in jail—charged with count I. ██ Defendant claims the trial court's refusal to strike these references to his incarceration constituted reversible error. Defendant's contention must fail.

Pursuant to Evidence Code section 352, the trial judge has discretion to exclude or admit relevant evidence, based on his assessment of whether its probative character outweighs its prejudicial effect. Here, the trial court offered to admonish the jury not to consider "whether the arrest was a valid one or whether [defendant] was guilty of anything, only for the purpose of explaining the transaction . . . ." The defense did not accept the offer.

In the case at bench the jury had been informed that defendant had been incarcerated with respect to count I. The jury was also clearly instructed on the presumption of innocence the defendant possessed with respect to all the charges, and we cannot, on the basis of this record, assume that the jury drew any conclusion to the contrary from the fact of incarceration. Had the evidence been excluded, the record supports our conclusion that a result more favorable to defendant would not have been obtained. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) We perceive no abuse of discretion by the trial judge.

## IV

Finally, defendant argues that the record does not show adequate statement by the court of reasons for (1) imposing the high term on count I and (2) consecutive terms for counts II and III. California Rules of Court, rule 421, lists the "Circumstances in Aggravation" that a trial judge is to consider in rendering his sentence choice, including such elements as the involvement of multiple victims, the sophistication of the criminal enterprise and the past conduct of the defendant—all elements having pertinence in the case at bench.

It is true that California Rules of Court, rule 439, provides that "The facts and reasons for selecting the upper . . . term shall be stated orally on the record, and shall include a concise statement of the ultimate facts which the court deemed to constitute circumstances in aggravation . . . ." In addition, imposition of consecutive rather than concurrent sentences has been held to require a statement on the record. (*People* v. *Walker* (1978) 83 Cal.App.3d 619 [148 Cal.Rptr. 66].)

However, what constitutes an adequate "statement of reasons" on the record has resulted in divergent views among the Courts of Appeal. Several decisions have been issued directing remand for resentencing on the ground of an inadequate trial record. (See, e.g., *People* v. *Walker, supra; People* v. *Turner* (1978) 87 Cal.App.3d 244 [150 Cal.Rptr. 807]; *People* v. *Anjell* (1979) 100 Cal.App.3d 189 [160 Cal.Rptr. 669].)

In the instant case when sentencing defendant on count I, the trial judge declared that he was adopting the factors in aggravation "set forth in the probation report at page twenty-one." The question presented is whether this was an adequate articulation of reasons. The People submit that it was, relying on *People* v. *Blessing* (1979) 94 Cal.App.3d 835 [155 Cal.Rptr. 780]. There the trial judge's statement of reasons failed through inadvertence to include the precise basis for imposition of consecutive sentences. The *Blessing* court declined to remand, finding upon review of the entire record that the imposition of consecutive sentences was justified. Noting that "[a] recurring theme in the determinate sentence law is that those judicial officers who implement it should orally state the reasons for their sentencing choices on the record" (94 Cal.App.3d at p. 837), the court held that there was no impairment of appellate review by the trial court's inadvertent failure to list the factors as set forth in rule 421. "A simple recital of the applicable criteria would not have served any useful purpose. [¶] We are unwilling to en-

gage in idle gestures or reach ridiculous results by slavish adherence to ritualistic form. A brief glance at the record shows that defendant's crimes met every criteria listed in the rule and there is a total absence of any mitigating circumstances." (94 Cal.App.3d at pp. 838-839.)

In the case at bench, we augmented the record pursuant to California Rules of Court, rule 12(a), by ordering up the superior court file including the probation report. We have examined the probation report which listed six factors in aggravation and none in mitigation and strongly recommended state prison including consecutive sentences as a protection for the people of California. As in *Blessing*, the entire record totally supports the trial judge's sentencing choices because it establishes that defendant has stolen from numerous individuals and business entities over a long period of time; has so conducted himself while on probation previously; and has never shown, nor does he now show, any remorse for his criminal conduct.

It seems improbable to us, under the circumstances, that a result more favorable to defendant would be obtained by remand for resentencing; nor would justice be served by expending our valuable judicial resources in such a fashion.

DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Lillie, J., concurred.