[No. H004537. Sixth Dist. Dec. 24, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID MICHAEL FERNANDEZ, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

COUNSEL

Harvey R. Zall, State Public Defender, under appointment by the Court of Appeal, and Kent Barkhurst, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Gerald A. Engler and Violet M. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CAPACCIOLI, Acting P. J.—

## I. Statement of the Case

Defendant David Michael Fernandez appeals from a judgment entered after a jury found him guilty of 155 counts of lewd and lascivious conduct upon a child and 1 count of lewd conduct by force (Pen. Code, § 288, subds. (a) and (b) (hereafter sections 288(a) and 288(b)).[1] He admitted having a prior "serious felony" conviction for rape and having served a prior prison term for various felonies. (§§ 667, 1192.7, subd. (c)(3), and 667.5.) He was sentenced to 330 years in prison. On appeal, he claims the prosecution failed

---

[1] Unless otherwise specified, all further statutory references are to the Penal Code.

to present sufficient specific evidence of each count. He also claims the court gave an erroneous unanimity instruction, erred in failing to grant a mistrial due to jury misconduct, and committed numerous sentencing errors. We affirm the conviction but remand the matter for resentencing.[2]

## II. *Facts*

Defendant and Cathy were married for 14 years and had 3 children, including a daughter R., who was born in 1976 and, at the time of trial, was 11 years old. R. attended third grade at Glenview School in Gilroy from September 1984 to June 1985. She repeated third grade, spending the first half at Glenview and the second half at El Roble school in Gilroy. She attended fourth grade at El Roble.

R. testified that her father engaged in three types of lewd conduct with her. Using an incident that occurred during the summer of 1987, between third and fourth grade, she explained that defendant told her to go into his bedroom and lie on her back. After removing his clothes, defendant straddled her and rubbed his penis against her vagina until he ejaculated. Thereafter, he cleaned both of them off with a towel. R. testified that defendant simulated intercourse in this way "a lot," twice a week during third and fourth grades and the summers through the fourth grade. She also said that once, when she was 11 years old, she told defendant she did not want to undress and tried to leave the room, but defendant hit her in the face, giving her a "fat lip." He then simulated intercourse with her.

R. testified that at least twice a week during this same time period, more often than simulated intercourse, defendant had her masturbate him with her hand. She also said that at least once during the third grade and again during fourth grade, defendant had her orally copulate him until he ejaculated.[3]

R. testified that she once told her mother about the molestation, and her mother became upset and confronted defendant, but he denied everything.

---

[2] This opinion was originally filed on October 13, 1989. On February 15, 1990, the California Supreme Court granted review (S013201). On August 22, 1990, the case was retransferred to us "with directions to vacate [our] opinion and to reconsider the matter in light of *People* v. *Jones* (1990) 51 Cal.3d 294 [270 Cal.Rptr. 611, 792 P.2d 643]. We have done so and find our discussion fully consistent with *Jones.* Hence, we need not draft a new opinion and have not done so.

[3] On cross-examination, R. could not state which days of the week the molestations took place. She also indicated that there were some weeks when no molestation took place. She also could not remember whether she was molested during the week of her last birthday, the week of Christmas, or the week a cousin stayed at the house.

R. said that she wrote about being molested in her diary. Her Aunt Tina, defendant's sister, discovered the entry, asked R. about it, and immediately called child protective services. Thereafter, the police interviewed R.

On July 23, 1987, Officer Raymond Hansell of the Gilroy Police Department spoke to R. She told him that on July 20 and July 21, 1987, defendant simulated intercourse with her. She also said the molestation started when she was eight years old and that she orally copulated defendant.

R. testified that defendant came home while she was talking to Officer Hansell and stood in the hallway shaking his head. She took this as a signal to be quiet about the molestation.

R.'s brother Michael testified that defendant would call R. into his bedroom for a "backrub" about four times per week. The door was always shut, except on one occasion when defendant came out wearing only a shirt and underwear. He saw R. inside the room wearing only her underwear. Michael said that R. looked upset whenever she came out of defendant's bedroom but never explained why. He also recalled a time when R. went into defendant's bedroom and came out with a "fat lip."

The defense sought to impeach R.'s credibility by attacking particulars of her testimony and showing the improbability that she was molested at certain times because other adults were there.

Officer Joe Ramirez of the Gilroy Police Department testified that when he interviewed R. on July 29, 1987, she said she orally copulated defendant on July 20, contrary to what she told Officer Hansell.

Defendant's mother testified that she came over to defendant's house to look after his children on July 20 because neither R.'s mother nor defendant could be there. She said she was there from 2:45 p.m. until 1 a.m. the next morning.

Defendant's wife Cathy, who was divorcing him at the time of trial, testified that she stayed home from work for a period of time the previous year due to an injury. She could not recall how long she was home but was on heavy medication and slept a lot. She said that everyone in the family gave defendant back rubs in his bedroom.

III. *Discussion* *

. . . . . . . . . . . . . . . . . . . . .

IV. *Sentencing Errors*

Defendant contends the trial court committed numerous sentencing errors. We agree.

Before explaining the court's errors, we recount how it determined defendant's sentence in the first place.

The probation report lists six circumstances in aggravation (Cal. Rules of Court, rule 421[7] and no circumstances in mitigation (rule 423). It recommended, inter alia, a prison term of 146 years. The report was reviewed and approved by a supervising probation officer, who, for reasons not revealed in the record, submitted a separate memorandum to the court "to show the maximum possible exposure on the charges." She found this to be 330 years.

After reviewing the probation report and supplemental memo, the court stated, "The testimony of the complaining witness was both overwhelming and pathetic in its nature. The charges are such that this Court feels it has no alternative based upon the conduct of the Defendant, his past conduct, to impose the maximum possible sentence. I will do so. [¶] Probation officer [*sic*] makes note . . . that the Defendant cannot be rehabilitated. He has shown by his repeated deviant behavior that he cannot or will not conform to the mores of society and it suggests in a poetic fashion that he should spend his time behind bars. That is an understatement. [¶] Mr. Fernandez, to suggest that your behavior is deviant is an understatement. Your behavior is beyond all acceptable norms of society that we live in today. Nothing more can be said by me. It would be redundant to say anything else."

The court then imposed an aggravated eight-year principal term for one violation of section 288(a), stating, "I base that aggravated term upon Rule 421 and the circumstances in aggravation more specifically set forth in the

---

* See footnote, *ante,* page 669.

[7] Although the probation report also discussed the factors relevant to the granting of probation, we need not enumerate them here, for defendant does not claim that the court erred in denying probation.

All references to rules are to the California Rules of Court.

probation officer's report." The court likewise found the remaining violations of section 288(a) to be aggravated, but stated no reasons for doing so. For each, the court imposed consecutive two-year terms, staying the other six years of the aggravated terms so as to comply with the one-third-the-middle-term requirement of section 1170.1, subdivision (a) (hereafter section 1170.1(a).) (See rules 439 and 449.) The court stated no reasons for making these terms consecutive.

As to the violation of section 288(b), the court expressly stated it was exercising its discretion under section 667.6, subdivision (c) (hereafter section 667.6(c)), to impose a consecutive eight-year aggravated term, "again relying on Rule 421 of the circumstances in aggravation more specifically set forth in the probation officer's report."

In addition, the court imposed a consecutive five-year enhancement for a prior "serious felony" conviction and a consecutive one-year enhancement for a prior prison term, making a total sentence of three hundred thirty years.

■ The most fundamental duty of a sentencing court is to state reasons justifying the sentencing choices it makes. (§ 1170, subd. (c); rule 443; *People* v. *Gulbrandsen* (1989) 209 Cal.App.3d 1547, 1552 [258 Cal.Rptr. 75]; see rule 405(f).) ■■■■ Here, the trial court was required to state reasons for imposing the 156 aggravated terms (§ 1170, subd. (b); *People* v. *Turner* (1978) 87 Cal.App.3d 244, 246-247 [150 Cal.Rptr. 807]; see § 1170.3; rules 439(c) and 405(f)); the 154 consecutive sentences under section 1170.1(a) (§ 1170.3; *People* v. *Belmontes* (1983) 34 Cal.3d 335, 346-347 [193 Cal.Rptr. 882, 667 P.2d 686]; see rules 405(f) and 425); and the one full-term consecutive sentence under section 667.6(c). (*Ibid.*; *People* v. *Coleman* (1989) 48 Cal.3d 112, 161-163 [255 Cal.Rptr. 813, 768 P.2d 32].)[8]

■ In imposing an aggravated term for one violation of section 288(a) and a full consecutive term for the violation of section 288(b), the trial court simply cited rule 421 and incorporated by reference the aggravating factors enumerated in the probation report. This method of stating reasons was

---

[8] The court could use the same reasons for imposing the two different types of consecutive sentences, but it was nevertheless required to identify "the criteria which justify use of the drastically harsher provisions of section 667.6, subdivision (c)." *(People* v. *Belmontes, supra,* 34 Cal.3d at p. 348.)

We also note that since a violation of section 288 (a) is deemed a "violent felony" under section 667.5, subdivision (c)(6), the double-the-base-term limitation in section 1170.1, subdivision (g) is not applicable. *(People* v. *Stephenson* (1984) 160 Cal.App.3d 7, 9-12 [206 Cal.Rptr. 444].)

proscribed over 10 years ago in *People* v. *Turner, supra,* 87 Cal.App.3d 244, 247. There, the court concluded that merely incorporating the probation report by reference violates the spirit of the sentencing laws and fails to properly explain the basis for any sentencing choice. (Accord *People* v. *Turner, supra,* 87 Cal.App.3d 244, 247; *People* v. *Hernandez* (1979) 100 Cal.App.3d 637, 643 [160 Cal.Rptr. 607]; *People* v. *Davis* (1980) 103 Cal.App.3d 270, 280 [163 Cal.Rptr. 22]; *People* v. *Salazar* (1980) 108 Cal.App.3d 992, 1000 [167 Cal.Rptr. 38], disapproved on other points in *People* v. *Wolcott* (1983) 34 Cal.3d 92, 106, fn. 6 [192 Cal.Rptr. 748, 665 P.2d 520], and *People* v. *Sumstine* (1984) 36 Cal.3d 909, 921, fn. 8 [206 Cal.Rptr. 707, 687 P.2d 904].)

Given such long-standing precedent, we are surprised the trial court here considered incorporation proper. However, we are not surprised that the practice still persists, for appellate courts routinely deem the error harmless. (See, e.g., *People* v. *Green* (1988) 200 Cal.App.3d 538, 542-543 [246 Cal.Rptr. 164]; *People* v. *Porter* (1987) 194 Cal.App.3d 34, 39 [239 Cal.Rptr. 269]; *People* v. *Swanson* (1981) 123 Cal.App.3d 1024, 1033 [176 Cal.Rptr. 915]; but see *People* v. *Hernandez* (1988) 204 Cal.App.3d 639, 655 [251 Cal.Rptr. 393].)

Here, a review of the factors listed in the probation report clearly demonstrates why incorporation frustrates meaningful appellate review.

As is usually the case, the report lists all of the factors set forth in rule 421 verbatim, and the probation officer simply checked the ones she felt applicable.

■ The first factor checked is that the crime "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness, whether or not charged or chargeable as an enhancement under Section 12022.7." (See rule 421(a)(1).) This factor is potentially applicable only to one of the 156 counts: the violation of section 288(b), forcible lewd conduct. Thus, the court erred in incorporating it to aggravate a violation of section 288(a).

As to the violation of section 288(b), one element of the offense is the use of "force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim." (§ 288(b).) Thus, force cannot be used as an aggravating factor. (Rule 441(d).)

The record reveals that defendant once overcame R.'s refusal to cooperate by giving her a "fat lip." Such force is clearly sufficient to establish the

offense. However, by incorporating the probation report, the trial court made it impossible to determine whether it specifically determined that defendant used "great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness" so as to make the aggravating factor applicable. (Cf. *People* v. *Garcia* (1989) 209 Cal.App.3d 790, 793-794 [257 Cal.App. 495].)

The second aggravating factor listed in the probation report is the victim's vulnerability. (Rule 421(a)(3).) Clearly, R. was "vulnerable" because she was a child. ■ However, where, as here, an age range factor is an element of the offense, vulnerability based on age is generally not a proper aggravating factor. (*People* v. *Quinones* (1988) 202 Cal.App.3d 1154, 1159 [249 Cal.Rptr. 435]; *People* v. *Garcia* (1983) 147 Cal.App.3d 1103, 1104-1106 [195 Cal.Rptr. 494]; *People* v. *Ginese* (1981) 121 Cal.App.3d 468, 475-477 [175 Cal.Rptr. 383]; see rule 441(d).)

■ Defendant's paternal relationship to R. also rendered her vulnerable. (*People* v. *Garcia* (1985) 166 Cal.App.3d 1056, 1070 [212 Cal.Rptr. 822].) However, this aspect of vulnerability is merely another way of saying defendant "took advantage of a position of trust or confidence to commit the offense[,]" which the probation report separately noted as another aggravating factor. (Rule 421(a)(12).) Abuse of the parental relationship, however, represents only one aggravating factor, not two. (See *People* v. *Garcia*, *supra,* 166 Cal.App.3d at p. 1070.) Although there may be other circumstances that rendered R. especially vulnerable, the court, by simply incorporating the probation report, avoided determining what they are.

The report finds aggravating the "planning, sophistication or professionalism with which the crime was carried out, or other facts, indicating premeditation." (See rule 421(a)(8).) The probation officer also wrote the word "repetition" in the report. We express no opinion about the applicability of this factor. However, if applicable here, it would also probably apply in every resident child molester case. For this reason further elaboration would be particularly helpful in understanding how and why the facts showing premeditation in this case made the offenses worse than they ordinarily would have been. (See *People* v. *Young* (1983) 146 Cal.App.3d 729, 734 [194 Cal.Rptr. 338] [aggravating factor must make offense distinctively worse than it would ordinarily have been].)

■ The probation report also notes as aggravating the "defendant's prior convictions as an adult or adjudications of commission of crimes as a juvenile are numerous or of increasing seriousness." (See rule 421(b)(2).)

Incorporation of this factor is problematic because the court used defendant's prior rape conviction to enhance his sentence. Since this enhancement is, in effect, a consecutive sentence, the prior conviction could again be used to impose consecutive sentences under sections 1170.1, subdivision (b) and/or 667.6, subdivision (c). (*People* v. *Reeder* (1984) 152 Cal.App.3d 900, 918-919 [200 Cal.Rptr. 479].) However, the court's blanket incorporation resulted in the improper use of the prior conviction both to enhance *and* impose an aggravated term. (*Ibid*.; *People* v. *Coleman, supra*, 48 Cal.3d at p. 163; rule 441(c).) To avoid such dual use, the court had to explicitly exclude defendant's prior rape conviction from consideration as an aggravating factor. (See, e.g., *People* v. *Roberson* (1978) 81 Cal.App.3d 890, 894 [146 Cal.Rptr. 777], disapproved on another point in *People* v. *Crowson* (1983) 33 Cal.3d 623, 632, fn. 10 [190 Cal.Rptr. 165, 660 P.2d 389]; see also *People* v. *Barker* (1986) 182 Cal.App.3d 921, 940 [227 Cal.Rptr. 578].) Incorporation by reference, however, suggests the trial court was not aware of the dual-use danger inherent in using this factor.

Moreover, had the court excluded consideration of the prior rape conviction, only two prior convictions would have been left: one for false imprisonment and the other for possession of stolen property. ■ Two prior convictions, however, are not "numerous." (*People* v. *Berry* (1981) 117 Cal.App.3d 184, 191 [172 Cal.Rptr. 756].) Nor do these prior convictions reflect "increasing seriousness." Thus, the applicability of this factor is questionable.

Finally, the report notes that defendant "served prior prison terms whether or not charged or chargeable as an enhancement under Section 667.5." (See rule 421(b)(3).) Reliance on this factor is equally suspect. ■ The record reveals that defendant was tried, convicted, and sentenced for rape, false imprisonment, and possession of stolen property and served one prison term for these offenses. Since the court used this term to impose a one-year enhancement, its further use as an aggravating factor involves an improper dual use of facts. (*People* v. *Hurley* (1983) 144 Cal.App.3d 706, 710 [192 Cal.Rptr. 805].)

■ As our discussion makes clear, the trial court's use of incorporation by reference as a sentencing technique permitted it to avoid careful consideration of the probation report, the sentencing rules, the choices before it, and the facts of the case. Indeed, it appears the court was unaware incorporation was improper and would necessarily cause additional sentencing errors. Thus, to say that despite such incorporation, we can meaningfully review the sentence and the court's reasons therefor would be an absolute fiction.

Incorporation by reference, however, was not the trial court's only error. It failed to provide any reasons for imposing aggravated terms for 154 violations of section 288(a). It also failed to provide reasons for imposing consecutive sentences under section 1170.1(a) on these counts.[9] *(People* v. *Belmontes, supra,* 34 Cal.3d at pp. 346-347.) This latter error suggests the court was not aware of this discretionary sentencing choice, a suggestion further supported by the court's introductory remark that it had "no alternative" but to impose the "maximum possible sentence" and the probation report's failure to discuss the factors relevant to imposition of consecutive sentences (rule 425). (Cf. *Id.* at pp. 347-348 and fn. 8 [failure to explain use of section 667.6(c) may indicate lack of awareness of discretion].)

 Finally, incorporation with respect to the aggravated, consecutive full-term sentence for the section 288(b) count violated the prohibition against dual use of facts both to enhance and to impose an aggravated term. (Rule 441(c).)

 The Attorney General concedes that incorporation by reference was error but claims the error was harmless because the court's prefatory remarks constitute an adequate alternative statement of reasons. (Cf. *People* v. *Williams* (1984) 157 Cal.App.3d 145 [203 Cal.Rptr. 562] [prefatory remarks reflect adequate reasons for sentencing choices].) We disagree.

The court's prefatory statement noted (1) the "overwhelming and pathetic" nature of R.'s testimony; (2) defendant's "past conduct"; (3) the probation officer's view "that the Defendant cannot be rehabilitated"; (4) that his "repeated deviant behavior" shows an inability or refusal to "conform to the mores of society"; and (5) that defendant's "behavior is beyond all acceptable norms of society that we live in today." We disagree.

Reasons (1), (4), and (5) are too vague and editorial to constitute meaningful, fact-based reasons for making more punitive sentencing choices. The evidence of defendant's guilt can hardly be considered "overwhelming." And even if it were, this fact is not a proper aggravating factor. *(People* v. *Reeder, supra,* 152 Cal.App.3d 900, 921; see also *People* v. *Smith, supra,* 155 Cal.App.3d 539 [nature of crime not proper reason for sentencing choice].)

Moreover, as previously noted, an aggravating factor must make the offense distinctively worse than it would ordinarily have been. *(People* v. *Young, supra,* 146 Cal.App.3d at p. 734.) Reasons (4) and (5) accurately

---

[9]The court was not, however, required to provide separate reasons for *each* consecutive sentence. *(People* v. *Smith* (1984) 155 Cal.App.3d 539, 545 [202 Cal.Rptr. 259].)

describe and apply to *all* persons convicted of violations of section 288(a), regardless of the particular facts, and do not indicate why defendant's conduct deserves harsher punishment than that of any resident child molester.

Reason (3) is merely the court's verbatim repetition of the probation officer's poetic personal feeling about defendant and does not reflect a finding of fact supported by relevant specific evidence on the issue of defendant's amenability to rehabilitation.[10] (Cf. *People* v. *Stone* (1981) 117 Cal.App.3d 15, 20 [172 Cal.Rptr. 445] [rejecting the court's iteration of probation officer's comment that defendant was "predatory type of individual"].)

Reason (2), defendant's "past conduct," represents a legitimate, although highly generalized, consideration. (See rule 421(b)(1) through (b)(5); rule 423(b)(1) through (b)(6).)

This reason, however, is problematic because defendant's past conduct includes a prior conviction and prison term for, inter alia, rape.[11] Our previous discussion of why incorporation by reference of the fact that defendant suffered prior convictions is an inadequate reason to support the court's numerous sentencing choices applies with equal force. (See pp. 680-682, *ante*.)

Finally, the court's introductory remarks combined with its later attempt to properly explain defendant's sentence still do not demonstrate the court's awareness that in imposing 154 aggravated and consecutive sentences for violations of section 288(a), it was making discretionary choices.

In sum, the trial court's prefatory remarks do not constitute an adequate explanation of defendant's 330-year sentence.

The Attorney General's fallback position is that any and all sentencing errors are harmless in light of the aggravating factors and absence of mitigating factors in the probation report. We do not agree.

---

[10] After summarizing the offenses, the probation report states, "It is clear this defendant *cannot be rehabilitated. He has shown by his repeated deviant behavior that he cannot or will not conform to the mores of society. He should be well on his way to spending his life in an institution where the walls are steel and the doors are iron."*

[11] Citing the information, the Attorney General incorrectly asserts that defendant suffered two prior rape convictions. Although the information separately alleged a prior rape conviction and a prior prison term served for a rape conviction, the two allegations refer to the same superior court case number, indicating that defendant suffered only one rape conviction.

The trial court imposed the maximum sentence possible with only the most cursory explanation. It failed to appreciate the gravity and complexity of sentencing in a case involving 156 offenses. And it does not appear to have examined the facts in light of the relevant sentencing factors. Under these circumstances, it is inappropriate to uphold defendant's sentence simply because we could theoretically manipulate the aggravating factors in the probation report so as to uphold a sentence of 330 years. Doing so would make a travesty of proper sentencing procedure. Under the rubric of harmless error, we would, in effect, be instituting a two-step sentencing procedure for this case: the trial court chooses the length of defendant's sentence, and we provide the factual justification. Such an underlying procedural reality, however, is clearly at odds with our admonition to trial courts not to reason backward to justify a particular, arbitrarily chosen length of sentence. (*People* v. *Swanson* (1983) 140 Cal.App.3d 571, 574 [189 Cal.Rptr. 547]; see *People* v. *Stevens* (1988) 205 Cal.App.3d 1452, 1457 [253 Cal.Rptr. 173]; see also *People* v. *Lepe* (1987) 195 Cal.App.3d 1347, 1351 [241 Cal.Rptr. 388].)

 It is also inconsistent with the important interests served by requiring *trial courts* to articulate "in simple language the primary factor or factors that support the exercise of discretion" (rule 443): "[I]t is frequently essential to meaningful review; it acts as an inherent guard against careless decisions, insuring that the judge himself analyzes the problem and recognizes the grounds for his decision; and it aids in preserving public confidence in the decision-making process by helping to persuade the parties and the public that the decision-making is careful, reasoned and equitable." (*People* v. *Martin* (1986) 42 Cal.3d 437, 449-450 [229 Cal.Rptr. 131, 722 P.2d 905].)

 In any event, the trial court's errors were not harmless. There is an enormous difference between the minimum sentence possible, or even the probation officer's recommendation, and the sentence imposed. Defendant's sentence reflects several different *types* of sentencing choices, and in imposing aggravated and consecutive terms for each offense, the court technically made over 300 choices.[12] Under the circumstances, we do not find it reasonably probable the trial court would have imposed the harshest sentence possible had it actually analyzed the probation report, relevant sentencing criteria, and the qualitative weight of the aggravating factors.

---

[12] We do not mean to suggest that the court must *separately* state a reason for each choice. It must, however, explicitly demonstrate an awareness of both the different types and the number of choices it is making.

## V. *Disposition*

We affirm defendant's conviction but remand the matter for resentencing in accordance with this opinion.[13]

Premo, J., and Elia, J., concurred.

A petition for a rehearing was denied January 14, 1991, and appellant's petition for review by the Supreme Court was denied March 21, 1991. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

[13] We reject defendant's request that the matter be referred to a different sentencing judge and are confident that the original judge can and will sentence defendant in light of our discussion and solely on the basis of the proper criteria. (Cf. *People* v. *James* (1989) 208 Cal.App.3d at p. 1167, fn. 7 [256 Cal.Rptr. 661].)